**MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., Defendant.**

**CIVIL ACTION NO. 1:12–CV–3222–AT**

United States District Court, N.D. Georgia, Atlanta Division.

Signed March 24, 2016

Anthony D. Seach, Craig S. Jepson, Daniel Scardino, Henning Schmidt, Ian Cohen, Joshua Gabriel Jones, Dominique Gelene Stafford, Reed & Scardino LLP, Chad Ennis, Sutherland Asbill & Brennan LLP, Austin, TX, Martha Logan Decker, Steven G. Hill, Hill Kertscher & Wharton, LLP, Atlanta, GA, for Plaintiff.

Robert L. Lee, Patrick J. Flinn, Siraj Mukund Abhyankar, Alston & Bird, LLP, Atlanta, GA, for Defendant.

### ORDER

Amy Totenberg, United States District Judge

This patent case presents the abstract question of what is meant by the word "abstract." Plaintiff Mobile Telecommunications Technologies, LLC ("Mtel") alleges that Defendant United Parcel Service, Inc. ("UPS") infringed on Mtel's patented method for "provid[ing] prompt notification of delivery of an express mailing to the addressee thereof." (Doc.1–1.) UPS filed a Motion for Judgment on the Pleadings [Doc. 145] arguing that Mtel has attempted to impermissibly patent the abstract idea of "notifying the recipient of an express mailing that the mailing is late" or that "it has been delivered." (Doc. 145–2 at 1 ("Motion").) For the following reasons, UPS's Motion is **GRANTED.**

### I. STANDARD

■ "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998) (citing Fed. R. Civ. P. 12(c)). The legal standard for assessing a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6). *Id.*; *Roma Outdoor Creations, Inc v. City of Cumming, Ga.*, 558 F.Supp.2d 1283, 1284 (N.D.Ga.2008).

■ This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed.2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Duke v. Cleland*, 5

F.3d 1399, 1402 (11th Cir.1993). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

## II. BACKGROUND

Mtel owns United States Patent No. 5,786,748 (the " '748 patent"), titled "Method and Apparatus for Giving Notification of Express Mail Delivery." The patent covers, "*inter alia*, methods for providing notification of an express mail delivery to an addressee via wireless page messages." (Compl.¶ 13.) More specifically, the patent claims the following:

1. A method for providing notification of an express mail delivery to an addressee thereof, comprising the steps of:

(a) sending to an express mail tracking service an ID number assigned to an express mailing and a page number of a delivery notification recipient;

(b) relaying the ID page number and an appointed time to a paging operations center;

(c) providing a first indication to the paging operations center that the express mailing has been delivered to the addressee;

(d) providing a second indication to the paging operations center that the express mailing has not been delivered to the addressee by the appointed time;

(e) transmitting, responsive to the first indication a wireless page message to the recipient as notification of the express mailing delivery; and

(f) transmitting, responsive to the second indication a wire-less page message to the recipient notifying recipient that the express mailing has not been delivered by the appointed time.

2. The method according to claim 1 wherein the step of transmitting a wireless page message responsive to the first indication includes the step of transmitting a wireless page message that indicates a time that the express mailing was delivered.

3. The method according to claim 1 wherein the step of transmitting a wireless page message responsive to the first indication includes the step of transmitting a wireless page message that indicates a name of a person that signed for the express mailing.

('748 Patent, Compl. Ex. A at 6.)

On September 14, 2012, Mtel filed suit against UPS, alleging that UPS "practices the methods claimed in the '748 patent." (Compl.¶ 15.) Specifically, Mtel alleges that UPS infringed on the '748 patent by assigning identification numbers to packages it ships and then using said numbers to both "offer[ ] package tracking services that provide information on the status of a shipment via Short Message Service (SMS)," (Compl.¶ 16), and provide "information to an intended package recipient including whether there has been a delivery exception, such as when a package delivery has been delayed." (Compl.¶ 23.)

The Parties proceeded to claim construction, and the Court held a Markman hearing on July 3, 2013. On March 17, 2014, the Court issued its claim construction order. UPS then filed its motion for summary judgment on October 30, 2014, and the Special Master for this case issued

his Report and Recommendation on March 25, 2015. On July 29, 2015, UPS filed the present Motion for Judgment on the Pleadings, arguing for the first time that Mtel's patent was invalid under *Alice Corp.*, a 2014 United States Supreme Court case that continued that Court's recent trend of invalidating abstract method patents. While that motion perhaps could have been filed a bit sooner, the Court elected to entertain it given the likelihood that the issue would be raised at trial. (Order, Doc. 148.)

## III. DISCUSSION

■ The Patent Act provides protection for those who "discover[ ] any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. This statute has long contained an important exception: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, —— U.S. ——, 134 S.Ct. 2347, 2354, 189 L.Ed.2d 296 (2014) (citations and quotation marks omitted). The exception exists because "[l]aws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work," and "[m]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Id.*

Of course, "too broad an interpretation of this exclusionary principle [might] eviscerate patent law" because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature ... or abstract ideas." *Mayo Collaborative Svcs. v. Prometheus Laboratories, Inc.*, —— U.S. ——, 132 S.Ct. 1289, 1293, 182 L.Ed.2d 321 (2012).

Striking the proper balance in identifying those "abstract ideas" that are too ephemeral to be patentable is not an easy task, as courts have repeatedly observed.

*E.g., Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct. 3218, 3236, 177 L.Ed.2d 792 (2010) (Stevens, J., concurring) (the Supreme Court has yet to "provide[ ] a satisfying account of what constitutes an unpatentable abstract idea"); *DDR Holdings, LLC v. Hotels.com, LP*, 773 F.3d 1245, 1255 (Fed.Cir.2014) ("[d]istinguishing between claims that recite a patent-eligible invention and claims that add too little to a patent-ineligible abstract concept can be difficult, as the line separating the two is not always clear.")

■ In *Alice Corp.*, the Supreme Court identified a two part test to determine patent eligibility under Section 101. First, a court must first identify if the claim is directed at an abstract idea or other patent-ineligible concept. 134 S.Ct. at 2355. The Court looks at the claim elements both individually and in combination in determining whether a patent is aimed at an abstract idea *Id.* at 2355 n. 3; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed.Cir.2014) (invalidating a patent where "the concept embodied by the majority of the limitations describes only the abstract idea" of showing an advertisement before providing free content).

■ Next, the Court must determine if the remainder of the claim adds an "inventive concept" that includes an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more" than the abstract idea itself. *Alice Corp.*, 134 S.Ct. at 2355. "Simply appending conventional steps, specified at a high level of generality," to the abstract idea is not enough to create a patentable invention. *Id.* at 2357.

### A. Abstract Idea

■ The Court first addresses whether the '748 patent is directed at an abstract idea. Method patents like the one at issue

in this case present "special problems in terms of vagueness and suspect validity." *Bilski,* 561 U.S. at 608, 130 S.Ct. 3218. The trick is to try and detect the beating heart of the patent, its animating function. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),* 687 F.3d 1266, 1279 (Fed.Cir.2012) ("It is the management of the life insurance policy that is 'integral to each of [Bancorp's] claims at issue', not the computer machinery that may be used to accomplish it.") If that heart is a law of nature or natural phenomenon, "fundamental economic practice," "conventional business practice," or a "method of organizing human activity" that has long been "prevalent in our system of commerce," then the patent is aimed at an abstract idea. *Alice Corp.,* 134 S.Ct. at 2356; *DDR Holdings,* 773 F.3d at 1256.

For example, in *Alice Corp.,* the Supreme Court found that "a method of exchanging financial obligations between two parties using a third party intermediary to mitigate settlement risk" (in essence, using a form of escrow) was a fundamental economic practice "long prevalent in our system of commerce," and therefore an abstract idea that was unpatentable under § 101. 134 S.Ct. at 2356. The Court equated the idea of intermediated settlement with the concept of risk-hedging that was found unpatentable in *Bilski. Id.* The patents in *Alice Corp.* or Bilski both involved methods of organizing economic activity that were "conventional."

The Federal Circuit and district courts have quickly fallen in line with *Alice Corp.* and its sister cases, and have regularly invalidated a variety of method patents under § 101. In *Intellectual Ventures I LLC v. Capital One Bank,* the Federal Circuit found that a patent for a method of "storing, in a database, a profile keyed to a user identity and containing one or more user-selected categories to track transactions associated with said user identity ... and causing communication, over a communication medium and to a receiving device, of transaction summary data in the database for at least one or more user-selected categories" was directed towards the abstract idea of budgeting. 792 F.3d 1363, 1367 (Fed.Cir.2015) (patent aimed at tracking and storing information was directed to patent-ineligible abstract idea of budgeting). Although the patent claimed to implement budgeting using "the Internet and telephone networks," that limitation did not render the claims any less abstract. *Id.;*[1] *see also Bancorp Services,* 687 F.3d at 1278 (Fed.Cir.2012) (a patent for a method to track, reconcile, and administer life insurance policies was not patent eligible).

And in *Ultramercial, Inc. v. Hulu, LLC,* the Federal Circuit found a patent that recited the process of "receiving copyrighted media, selecting an ad, offering media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the ad" all described the "abstract idea of showing an advertisement before delivering free content" which was a long-used conventional business practice and therefore unpatentable. 772 F.3d 709, 715 (Fed.Cir.2014).

Finally, a number of recent persuasive district court cases have struck down patents under § 101 that are strikingly similar to this one. For example, in *Wireless Media Innovations, LLC v. Maher Terminals, LLC,* 100 F.Supp.3d 405, 417 (D.N.J. 2015), the court found that a "system for monitoring shipping containers and a computerized system for monitoring and re-

---

1. The court also held that a patent for tailoring web content based on a viewer's location or address was unpatentable, as targeted advertising has long been a conventional business practice.

cording location and load status of shipping containers relative to a facility" was not patent-eligible because it was aimed at an abstract idea. Even though the plaintiff argued that the claims were "not limited to the idea of monitoring [shipping] containers in the abstract, but ... specifie[d] details of how the monitoring is done, including the use of tangible components," the court found that was not enough to overcome the fact that the core of the claim was about a basic organizational business process. *Wireless Media* was recently affirmed in a *per curiam* Federal Circuit opinion. *Wireless Media Innovations, LLC v. Maher Terminals, LLC,* No. 15–1634, 636 Fed.Appx. 1014, 2016 WL 463218 (Fed.Cir. Feb. 8, 2016); *see also Essociate, Inc. v. 4355768 Canada Inc.,* No 14–cv–679, 2015 WL 4470139 (C.D.Cal. Feb. 11, 2015) (patent on the abstract idea of receiving and tracking e-commerce referrals was ineligible); *GT Nexus, Inc. v. Inttra, Inc.,* No. 11–cv–2145–SBA, 2015 WL 6747142, at *4–5 (N.D.Cal. Nov. 5, 2015) (rejecting a patent claim for "[a]n on-line system and method for buyers and sellers of international container transportation services" for a "single third-party portal for booking" shipment requests with "track and trace" and "event notification" functions because "booking and tracing container shipments through a third party is an abstraction" because the use of a third party intermediary and shipping of goods are established and "conventional business practice[s]"); *MacroPoint, LLC v. FourKites, Inc.,* No. 14–cv–1002, 2015 WL 6870118, at *2–3 (N.D.Oh. Nov. 6, 2015) (patent for "[a] computer implemented method for indicating location of freight carried by a vehicle" consisting of several steps was ineligible because it was directed to the "abstract idea of tracking freight.")

Those few cases cited by the Parties that upheld a method patent typically involved a method whose primary concern (or beating heart) was a specific piece of technology or technological problem. For example, in *SiRF Technology, Inc. v. Int'l Trade Comm.,* 601 F.3d 1319 (Fed.Cir. 2010), the Federal Circuit upheld the validity of a patent for a method for "calculating the absolute position of a GPS receiver and an absolute time of reception of satellite signals," because the GPS receiver was "integral to each of the claims at issue." Indeed, ascertaining the position of the receiver was the entire point of the patent (where here, delivery notification is the point). *See also Messaging Gateway Solutions, LLC v. Amdocs, Inc.,* No. 14–cv–737–RGA, 2015 WL 1744343, at *5 (D.Del. Sept. 2, 2015) (patent directed to a problem "unique to text-message telecommunication between a mobile device and a computer ... [was] tethered to the technology that created the problem.")

■■■ There are cases where the distinction between a patent aimed at an abstract idea and one aimed at a specific technological problem will be difficult. But this is not one of them. The method described by the patent has, at its core, one animating goal: notifying customers that their package is late, or that it has arrived. But business practices designed to advise customers of the status of delivery of their goods have existed at least for several decades, if not longer. Delivery notification is therefore the kind of conventional business practice long "prevalent in our system of commerce" that *Alice Corp.* found unpatentable. The fact that Mtel has automated the process of delivery notification in a particular way does not, under the circumstances of this case, render the ultimate idea behind its patent different or unique in substance from the general idea itself. 134 S.Ct. at 2350. Other courts have come to the same conclusion in analogous cases. *Essociate, Inc.,* 2015 WL 4470139 (receiving and tracking e-com-

merce referrals); *GT Nexus, Inc.*, 2015 WL 6747142, at \*4–5 (N.D.Cal. Nov. 5, 2015) ("booking and tracing container shipments through a third party"); *MacroPoint, LLC,* 2015 WL 6870118, at \*2–3 (abstract idea of "tracking freight.")

As in *Alice Corp.*, Mtel's patent concerns a longstanding "method of organizing human activity." There it was using an escrow; here it is telling someone when their package has arrived. And so the "abstract idea here is not meaningfully different from the ideas found to be abstract in other cases before the Supreme Court and [the Federal Circuit] involving methods of organizing human activity." *Intellectual Ventures*, 792 F.3d at 1367; *see also Wireless Media Innovations*, 100 F.Supp.3d at 417 (tracking shipping containers is an abstract idea).

## B. Inventive Concept

■■■ Because the Court finds that the '748 patent concerns the abstract idea of providing delivery notification for express packages, it turns to the second part of the *Alice Corp.* test: whether or not the patent contains an "inventive concept" (the "special sauce" of the patent world) that carries it across the threshold of patentability. Unfortunately for Mtel, it does not.

■■■ Under *Alice Corp.* and its predecessors, a "claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." 134 S.Ct. at 2357 (citations and internal brackets and quotation marks omitted). The introduction of a computer or an attempt to limit the use of the idea

to a "particular technological environment" is not enough to save the patentability of an abstract idea. *Id.* at 2357–58 ("wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance' that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.") Otherwise, "an applicant could claim any principle of the physical or social sciences by reciting a computer system configured to implement the relevant concept," which would hollow out the prohibition on patenting the fundamental and abstract. *Alice Corp.*, 134 S.Ct. at 2359. Similarly, merely reciting "the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" or a computer is insufficient. *DDR Holdings*, 773 F.3d at 1257. In fact, even the "addition of merely novel or non-routine components to" a claimed idea do not "necessarily turn[ ] an abstraction into something concrete." *Ultramercial,* 772 F.3d at 715.[2]

Virtually every case discussed above in Section III.A involved a patent implemented on a computer or in a particular technological environment. And by and large, those "limitations" did not save the patents from ineligibility. *Alice Corp.'s* patent for an intermediated settlement process involved a "substantial and meaningful role for the computer." Specifically, the claimed method used a computer to "create electronic records, track multiple transactions, and issue simultaneous instructions." 134 S.Ct. at 2359. It was still deemed ineligible: using a computer to create and maintain shadow accounts was

**2.** Courts still consider the pre-*Alice Corp.* "machine or transformation" test as a part of *Alice Corp.'s* second step, but it is no longer sufficient by itself to argue that a claimed method is tied to a particular machine to save a patent from invalidity under Section 101. *Vehicle Intelligence and Safety, LLC v. Mer-*

*cedes–Benz USA, LLC*, 635 Fed.Appx. 914, 919, 2015 WL 9461707, at \*4 (Fed.Cir. Dec. 28, 2015) (abstract idea of testing operators of moving equipment for physical or mental impairment is not patentable, despite use of specific "specialized existing equipment modules.")

"electronic recordkeeping—one of the most basic functions of a computer." *Id.* at 2359. The claims did not purport to "improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field," *id.* and so was insufficient to transform the abstract to the patentable. And the patent's recitation of terms like "data processing system," "communications controller," and "data storage unit" were no help either, since such hardware was "purely functional and generic." *Id.* at 2360.

The Court in *Intellectual Ventures* applied *Alice Corp.'s* reasoning to claims for a method for (1) budgeting notifications using "the Internet and telephone networks" and (2) tailoring online advertising content, and rejected both those methods' patentability. 792 F.3d at 1367. The patents included painstaking recitations of just how they would be implemented through technology, but that did not save them from the universe of the unpatentable. *See also Wireless Media Innovations,* 100 F.Supp.3d at 417 (rejecting patent for tracking shipping containers on a computer); *GT Nexus,* 2015 WL 6747142, at *4–5 (rejecting patent claim for "[a]n on-line system and method for buyers and sellers of international container transportation services" to book and trace shipments); *MacroPoint,* 2015 WL 6870118, at *2–3 (rejecting patent for "[a] computer implemented method for indicating location of freight.")

And in *Ultramercial,* the addition of eleven individual steps to a "method of using advertising as an exchange for currency," including "updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the internet" were not enough

to transform the abstract idea at the heart of the patent to a patentable method. The *Ultramercial* court made sure to emphasize that attempting to limit the use of an abstract idea to a "particular technological environment" (namely, the internet) was insufficient to preserve patent eligibility. And the fact that "some of the eleven steps were not previously employed [in that art was] not enough" to confer patent eligibility. *Id.* at 716. Judge Mayer's concurrence in *Ultramercial* sums up perhaps the central reason why the Supreme Court has frowned on the patentability of abstract ideas and methods implemented on computers: generic computers and the internet are "the basic tools of modern-day commercial and social interaction," and their use should remain "free to all men and reserved exclusively to none." 772 F.3d 709, 723 (Fed.Cir.2014) (Mayer, J., concurring).

As discussed above, the only time that in recent cases that courts have upheld a method patent was when the overarching aim of the patent was to solve a specific technical problem, not to implement an abstract idea. *E.g., SiRF,* 601 F.3d at 1332 (the position of a GPS receiver's position was "the precise goal of the claims.") For example, in *DDR Holdings,* the patent at issue involved a method for, in effect, combining websites so that when a user clicked a hyperlink, they were taken to a hybrid page that combined both the original site and the linked-to site. Although this idea was arguably directed at the idea of a "store-within-a store," which is a conventional business practice, the court found the claims to be limited to addressing particular problems posed by the internet that were not present in the physical world.[3] 773 F.3d at 1258 (finding that the

---

3. In a physical "store-within-a-store," a customer remains within the larger store even after they enter the smaller, contained store. In the web context, clicking a link takes the

customer away from the original web page— in essence, forcing the customer to walk outside.

"claimed solution amounts to an inventive concept for resolving this particular Internet-centric problem," but warning that "not all claims purporting to address Internet-centric challenges are eligible for patent"); *Messaging Gateway Solutions,* 2015 WL 1744343, at *5–6 (claim for method of translating SMS text messages to computers was patentable because it involved manipulating a computer in a way that "overrides conventional practice.") In sum, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* —— U.S. ——, 132 S.Ct. 1289, 1300, 182 L.Ed.2d 321 (2012).

Thus whether or not MTEL has added that special "something more" to this conventional business practice is determined by the quality, not the quantity, of its specific adornments and limitations. Mtel argues that its claims require "specific structures and data elements" such as the "paging operations center," "express mail tracking service," "ID number," and "wireless page message[s]," (Doc. 155 at 18), but it offers little in the way of explanation as to how these limitations are actually limiting. For example, it asserts that its method uses a ·connectionless network, and so excludes "voice communications"—thus "conclusively remov[ing] any preemption concern." (Doc. 155 at 18.) It further objects that its patent does not preempt all delivery status notifications, because UPS could provide those notifications ·by "having a UPS customer representative call the package recipients on the telephone." (Doc. 155 at 19.) But the implication of

Mtel's example is that it has patented a method of delivery notification that is the equivalent of a method implemented "through a computer" or "over the internet." Under this argument, UPS could call customers to advise them of the delivery status of their packages, but could not text them.

The Complaint and Mtel's briefing confirms as much. Mtel alleges that UPS practices the methods specified in the '748 patent by offering "package tracking services that provide information [updates] via Short Message Service (SMS)." (Compl.¶ 16.) It also argues that "a wireless page message is a specific data format—such· as a SMS message or email message—that is transmitted via a connectionless framework." (Doc. 155 at 23.) It insists that this is not "generic data of any form communicated by any means."[4]

But it is hard to understand how ·a "wireless page message"—like a "SMS message or email. message"—sent over a "connectionless framework"—like a cellular network or the internet—is anything but generic. (*Id.*) Arguing that something is specific does not make it so. These technologies and forms of communications are all ubiquitous.

This case presents claims that are functionally no different from the invalid claims that used the internet in *Ultramercial* and *Intellectual Ventures.* 772 F.3d at 716; 792 F.3d at 1367 ("interactive interface" ·did not add inventive concept to budgeting tracking); *see also BASCOM Global Internet Services, Inc. v. AT & T Mobility LLC,* 107 F.Supp.3d 639, 652–53 (N.D.Tex.2015) (patent for internet filtering invalid despite claim that it required

---

4. Mtel also argues that its business leaders' excited "initial reception to the invention" indicates that the limitations in the patent are non-conventional. This argument is not supportable. Great ideas and discoveries are not always (or even often) patentable. Someone could construct a unified theory of quantum gravity tomorrow to great fanfare and excitement, but that would not make the discovery patentable. ·

use of "special ISP server" and "particular filtering scheme and elements"); *Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14–cv–570, 2015 WL 1133244, at *8–10 (N.D.Cal., March 10, 2015) (claims' use of the terms "container definition nodes," "derived containers," and "repair frames" were insufficient to save a claim for "allowing hierarchical access to [stored] information based on categories of information stored [in a] repository" and "automated resolution of IT incidents," because those seemingly technical terms were in truth generic) (summary judgment). Finally, the steps recited in Mtel's claims represent "insignificant data-gathering steps" like "monitoring, recording, and inputting information" that add "nothing of practical significance" to the abstract idea underneath. *Wireless Media Innovations*, 100 F.Supp.3d at 416.

And unlike *DDR Holdings* and *SiRF*, Mtel's claims are not directed at a particular technological problem—instead, the claim utilizes technology to achieve its abstract end of delivery notification.

Accordingly, Mtel's patent claims cannot escape the gravity of the pre-emption concerns that figure prominently in *Alice Corp.* and its kin. 134 S.Ct. at 2354 ("We have 'repeatedly emphasized this … concern that patent law not inhibit further discovery by improperly tying up the future use of' these building blocks of human ingenuity"); *Ultramercial*, 772 F.3d at 713 (Mayer, J., concurring). Mtel's patent, by its own terms and under its own arguments, covers a method for delivery notification that could be implemented with generic components, using two of the most popular methods of communication currently available in SMS text messages and e-mail. That is the kind of patent *Alice Corp.* was aimed at.[5]

## C. Waiver or Delay

 Mtel also argues that UPS waived its assertion of Section 101 invalidity because it failed to include its Section 101 contentions in its responses to Mtel's interrogatories. Mtel cites case authority for the proposition that a Section 101 invalidity challenge not disclosed early enough during the case is waived. (Pl.'s Resp., Doc. 155 at 7.) But its out-of-district (and out-of-circuit) case authority relied on local rules requiring disclosure of Section 101 challenges near the outset of the case. *See Good Technology Corp. v. Mobileiron, Inc.*, No. 12–cv–5826, 2015 WL 3866019, at *1 (N.D.Cal. May 4, 2015) ("[i]n this district, the rules are clear: a party opposing a claim of patent infringement must include in its invalidity contentions 'any grounds of invalidity' based on 35 U.S.C. § 101,") and citing Patent L.R. 3–3(d), N.D. Cal.; *compare* Patent L.R. 4.3, N.D. Ga. (making no mention of Section 101 challenges or suggesting that undisclosed Section 101 challenges are barred for failure to disclose).

The other case relied upon by Mtel, *Woods v. DeAngelo Marine Exhaust, Inc.*, is also inapposite. 692 F.3d 1272, 1280 (Fed.Cir.2012). There, the Federal Circuit affirmed a district court's evidentiary decision to exclude engineering drawings produced by the defendant just two months before trial. *Id.* at 1277. These drawings purported to show prior art that anticipated the invention at issue in the case. *Id.* The Federal Circuit held that the defendant's late discovery supplementation was

---

**5.** Mtel argues that patents in the same subclass as the '748 category have rarely been invalidated in the wake of *Alice Corp.* Although it is obvious that business method and software patents form the biggest categories of patents invalidated in the wake of *Alice Corp.*, this does not eliminate the fact that Section 101 applies to all patents and is a "threshold" inquiry of eligibility.

deficient not just because it was late, but also because it failed to adequately respond to the plaintiff's interrogatories requesting identification of "the particular claim being referred to and why such prior art anticipates such claims or renders them obvious." *Id.* at 1282. This failure to respond harmed the plaintiff's ability to "meaningfully challenge [defendant's] reliance on the drawings as prior art." *Id.* The Federal Circuit emphasized that "[t]he district court has considerable discretion in overseeing compliance with the Federal Rules of Civil Procedure, including discretion to permit [or deny] supplement[ation of] responses to contention interrogatories until theories of the case have ripened for trial." *Id. at* 1280.

■ *Woods* was thus different from this case in both posture and underlying substance. It dealt with the review of a district court's discretionary discovery ruling, and that ruling concerned a prior art inquiry that was factual in nature. *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1137 (Fed.Cir.1985) ("the scope and content of ... prior art, the differences between the prior art and the claimed invention as a whole" are "factual issues" that underlie the legal question of obviousness.) Here, as UPS correctly observes, "Section 101 patent eligibility is a question of law." *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed.Cir.2014). Thus, although Mtel argues that it was deprived of the ability to develop a factual record, the Court could have reached the issue presented by UPS's motion before discovery even began. The prejudicial effect of a late disclosure of a Section 101 defense is simply different from the late disclosure of a prior art defense in *Woods*, because the first can potentially be decided without evidence and the latter is often substantially reliant on evidence.

■ Finally, the Court declines to otherwise bar UPS's motion because of its alleged tardiness, because it already determined it would entertain UPS's motion in its August 4, 2015 Order. This is because the Motion "raises threshold question of patent validity that would undoubtedly arise at trial." (Doc. 148 at 2.) The Court understands Mtel's frustrations at having to deal with this "threshold" question near the end of its case, but this matter was likely to be heard no matter what, because validity is fundamental to Mtel's ability to recover.

■ The Court does note, however, that UPS's motion presents a difficult issue on whether to award costs. Both Parties expended significant sums litigating this case, including the expense of paying for a Special Master to issue a Report and Recommendation on summary judgment. Some of those expenses could have been avoided had UPS been quicker to file its Motion. The Court notes that it retains significant discretion to award costs in patent litigation. *Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed.Cir.1996) ("the district court judge retains broad discretion as to how much to award, if anything"); *Camacho v. Vertical Reality Inc.*, 210 Fed.Appx. 985, 986 (11th Cir.2006) (Eleventh Circuit precedent "allows the district court discretion to deny a prevailing party costs ... [if the order denying costs is] accompanied by a reason for the denial sufficient to allow appellate review of the discretion.") The Parties should consider discussing the issue of costs in conjunction with the Court's directive to discuss settlement, found below.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** UPS's Motion for Judgment on the Pleadings [Doc. 145]. The Court **DENIES** UPS's Motion for Oral Argument [Doc. 146]. Because the Court is granting UPS's Motion for Judgment on the Plead-

ings, it will not revive UPS's Motion for Summary Judgment. (*See* Doc. 148 (denying without prejudice UPS's Motion for Summary Judgment, but indicating that the Court would revive the motion in the event it denied UPS's Motion for Judgment on the Pleadings.))

The Parties previously requested that the Court grant them an extension to engage in a post-discovery settlement conference after the Court ruled on UPS's motion(s). The Court **DIRECTS** the Parties to discuss in the next twenty (20) days whether or not they wish to engage in further settlement discussions. The Parties are **DIRECTED** to file a status report ("Status Report") on the docket within twenty (20) days of the entry of this Order indicating whether or not they wish to have extra time to discuss settlement (which should include discussing whether or not UPS will seek costs, given the Court's concerns outlined above). The Court **ADMINISTRATIVELY CLOSES**[6] this case, pending hearing from the Parties regarding if they intend to engage in settlement negotiations.[7] The Court **DEFERS** entering judgment until after it has received the Status Report. The Clerk is **DIRECTED** to submit the Status Report to the undersigned upon its filing.

**IT IS SO ORDERED** this 24th day of March, 2016.

---

6. Administrative closure of a case is a docket control device used by the Court for statistical purposes. Administrative closure of a case does not prejudice the rights of the parties to litigation in any manner. The Parties may move to re-open an administratively closed case at any time.

7. Although the Court indicated earlier that it would automatically reopen the case thirty (30) days after issuing an order on UPS's Motion, the Court will decline to do so until it has heard from the Parties on the status of their settlement talks.