WILLIAM M. RAY, II, UNITED STATES DISTRICT JUDGE
This case comes before the Court on Defendant Six Continents Hotels, Inc.'s Motion to Dismiss for Failure to State a Claim [Doc 26]. For the following reasons, Defendant's Motion is GRANTED .
I. BACKGROUND
A. Procedural History
On November 27, 2017, Plaintiff Valentine Communications, LLC (Valentine) filed its original complaint in the United States District Court for the Eastern District of Texas against a non-existent entity. [Doc 1]. After its original filing, Valentine amended its complaint to name IHG Resources as a Defendant. [Doc 7]. IHG Resources filed a motion to dismiss or, in the alternative, transfer the present case to this Court. [Doc 13]. Valentine consented to the transfer. [Doc 18].
After the present case was transferred to this Court, Valentine amended its complaint to drop IHG Resources as a defendant and add Six Continents Hotels, Inc. (SCH) in its place. [Doc 22]. Thereafter, SCH filed the Motion to Dismiss that is presently before the Court. [Doc 26].
B. Facts
This case concerns alleged patent infringement by SCH. In its Second Amended Complaint, Valentine alleges that SCH infringes two patents: United States Patent Nos. 8,567,672 (the '672 Patent) and 8,590,785 (the '785 Patent). [Doc 22 at ¶¶ 7-11, 29-33]. Valentine asserts that SCH infringes Claim 18 of the '672 Patent and Claim 1 of the '785 Patent (the Asserted Claims). [Doc 22 at ¶¶ 11, 33]. No other claim of either patent is at issue, and neither party identified any other claim that the Court should assess under 35 U.S.C. § 101.
At their core, the Asserted Claims are directed to the same economic practice: the idea of presenting discounts or offers for goods and services based on certain criteria, such as a user's location. For example, the Background to the '672 Patent states: "The present invention relates to an e-commerce multiple criteria buying *1226 and selling methodology and more particularly to a method and apparatus of using the e-commerce multiple criteria buying and selling methodology to conduct business electronically." '672 Patent at 1:21-25. Likewise, the '785 Patent states: "Briefly described, the subject disclosure pertains to systems and methods directed toward universal discount and demand aggregation." '785 Patent at 2:55-57.
Asserted Claim 18 of the '672 Patent is as follows:
A non-transitory computer-readable storage medium having embodied thereon instructions executable by a processor, the instructions corresponding to a method for providing a discount to a user associated with a user device, comprising:
receiving real-time location information of the user device when the user has consented to having information associated with the user device collected by a third party;
receiving user-defined criteria sent by the user device, wherein the criteria includes:
a quantity of a product or service, and
at least one date range having a minimum value and a maximum value indicating a time period during which the product must be delivered to the user or the service must be performed;
receiving a discount offered by at least one seller, the discount including pricing information associated with a product or service offered by the seller and a quantity of the product or service available for delivery or performance within a given date range from the at least one date range;
matching the discount to the user based on:
the quantity of the product or service,
the date range, wherein the date range matches one or more of the user-defined date ranges, and
a location specified by the user, wherein the location indicates where the product will be delivered or the service will be performed regardless of the current location of the user or the mobile device;
accessing by way of the user device an account with past transactional information and a stored payment method associated with the user; and
presenting the discount that requires the user to redeem the discount within a preset time period or based on availability of the product or service.
Asserted Claim 1 of the '785 Patent is as follows:
A mobile device, comprising:
a non-transitory computer readable storage medium having embodied thereon instructions executable by a processor to:
prompt a user to accept terms and conditions on the mobile device as a requirement to activate a service with at least one service provider, wherein the terms and conditions provide notice to the user regarding:
how information collected by way of the mobile device will be used,
how the information collected by way of the mobile device will be protected, and
the fact that collection of at least some of the information by way of *1227 the mobile device cannot be blocked by the user,
generate purchasing data associated with the user that includes information about products or services purchased by way of a credit or debit card;
a location-based service module executable to generate location-based data, wherein the location-based data corresponds to activities associated with the user of the mobile device; and
a wireless transmitter that:
transmits the location-based data to a third party,
automatically transmits at least a subset of the purchasing data, and
receives an offer for the product or service in response to the transmission of the subset of purchasing data and in accordance with a search function that allows the user to input location and delivery time criteria associated with the product or service.
Stripped of verbiage, the patents claim a fundamental economic practice and a way to conduct business electronically. Specifically, Claim 18 of the '672 Patent uses a "non-transitory computer-readable storage medium," such as a hard drive, with instructions to be executed via a computer processor to (i) receive a user's location; (ii) receive buying criteria from a user, including the quantity of a product or service and the date range of delivery; (iii) receive a discount from a seller with specified selling criteria including price, quantity, and the date range of availability; (iv) match buyers and sellers based on quantity, date range, and location; (v) access a user's account with stored payment and past transactional information; and (vi) present a discount to the user that expires at a certain time or based on product availability.
Claim 1 of the '785 Patent recites a mobile device that comprises (i) a "non-transitory computer readable storage medium" with instructions executable by a computer processor to prompt a user to accept terms and conditions and generate purchase data for the user about products or services that have been purchased by a credit card; (ii) a "location-based service module" to generate location data relating to the user; and (iii) a wireless transmitter that transmits the location-based data and a subset of the purchasing data, and receives an offer for the product or service in response to the transmission of the purchase data, in accordance with a user search function.
Both patent specifications make clear that no non-conventional hardware or software is necessary to implement these processes and, instead, propose a generalized means of realizing the claims. Specifically, the '672 Patent discloses that "[i]t is to be appreciated that any programming methodology and/or computer architecture suitable for carrying out the present invention may be employed........" '672 Patent at 25:28-31 (emphasis added). The '672 Patent also discloses that "the present invention may be implemented as a method, apparatus, or article of manufacture using standard programming and/or engineering techniques to produce software, firmware, hardware, or any combination thereof." Id. at 6:65-7:1 (emphasis added).
More specifically, to implement the abstract business idea of the '672 Patent, Claim 18 uses a standard hard drive ("computer readable storage medium") and a computer processor to conduct conventional computing functionality-such as receiving data, matching data, accessing data, and then presenting data. The '672 Patent describes "computer readable media *1228 [that] can include but are not limited to magnetic storage devices (e.g., hard disk, floppy disk, magnetic strips.....), optical disks (e.g., compact disk (CD), digital versatile disk (DVD) ...), smart cards, and flash memory devices (e.g., card, stick)." Id. at 7:5-10.
While the '785 Patent adds additional components, the specification also describes them as standard components. Specifically, Claim 1 of the '785 Patent recites a "mobile device" with a "non-transitory computer readable storage medium" (to store program instructions), a "processor" (to process data), a "location-based service module" (to generate location data) and a "wireless transmitter" (to transmit data). The '785 Patent specification states "all or portions of the subject innovation may be implemented as a method, apparatus or article of manufacture using standard programming and/or engineering techniques to produce software, firmware, hardware, or any combination thereof to control a computer to implement the disclosed innovation." '785 Patent at 20:28-33 (emphasis added). The '785 Patent also states the "Internet has been a delivery tool to provide these solutions." Id. at 5:39-43.
As with the '672 Patent, the '785 Patent specification generically describes each of the components specified by Valentine's asserted claim. The '785 Patent describes that its computer readable media "can include but are not limited to magnetic storage devices (e.g., hard disk, floppy disk, magnetic strips ...), optical disks (e.g., compact disk (CD), digital versatile disk (DVD) ...), smart cards, and flash memory devices (e.g., card, stick, key drive ...)." '785 Patent at 20:36-40.
With respect to the processor, the '785 Patent specification describes that its
systems/methods may be practiced with other computer system configurations, including single-processor, multiprocessor or multi-core processor computer systems, mini-computing devices, mainframe computers, as well as personal computers, hand held computing devices (e.g., personal digital assistant (PDA), phone, watch ...), microprocessor-based or programmable consumer or industrial electronics, and the like.
Id. at 20:60-21:1. In an "exemplary environment" of the '785 Patent, "[t]he processing unit 1514 can be any of various available microprocessors." Id. at 21:16-18.
The '785 Patent describes several conventional methods of determining a user's location through the "location-based service module," among them "global positioning satellite or other such locator system to determine a buyer's current location." Id. at 17:28-30; see also id. at 10:37-39. In one embodiment, the '785 Patent describes that location can be determined using the buyer's location from "a GPS mobile device (e.g., cell phone, PDA ...) and/or a vehicle navigation system." Id. at 17:33-37. Other methods of determining location include, for example, radio frequency identification (RFID). Id. at 17:56-58.
Last, the transmitters of the '785 Patent are also generically described as something that can receive and transmit information, such as through a cell tower and/or a satellite. See, e.g. , id. at 4:63-5:3, 12:36-39.
The Second Amended Complaint alleges that SCH infringed the patents by making, using, importing, selling, and/or offering for sale the IHG Mobile Application. [Doc 22 at ¶¶ 11, 33].
II. LEGAL STANDARD
A. 35 U.S.C. § 101
Section 35 U.S.C. § 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new *1229 and useful improvement thereof, may obtain a patent therefor...." 35 U.S.C. § 101. However, Section 101 does not cover "[l]aws of nature, natural phenomena, and abstract ideas." Alice Corp. Pty. Ltd. v. CLS Bank Int'l , 573 U.S. 208, 216, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014) (citation omitted); Automated Tracking Sols., LLC v. Coca-Cola Co. , 223 F. Supp. 3d 1278, 1285 (N.D. Ga. 2016), aff'd , 723 F. App'x 989 (Fed. Cir. 2018).
Alice Corp. v. CLS Bank International , 573 U.S. 208, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014), is the seminal case from the United States Supreme Court in analyzing patent claims to determine if they claim patentable subject matter under 35 U.S.C. § 101. In Alice , the Supreme Court employed a two-part test "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." Alice , 573 U.S. at 217, 134 S.Ct. 2347. First, a court must determine "whether the claims at issue are directed at a patent-ineligible concept." Id. at 218, 134 S.Ct. 2347. If the claims are so construed, the court proceeds to step two, at which point it must determine whether the claims contain an "inventive concept"-that is, "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." Id. at 217-18, 134 S.Ct. 2347 (internal citations and quotations omitted); Automated Tracking Sols., LLC , 223 F. Supp. 3d at 1285. However, "[s]imply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept." Alice , 573 U.S. at 222, 134 S.Ct. 2347 (internal quotations omitted).
B. Rule 12(b)(6)
Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are 'enough to raise a right to relief above the speculative level.' " TAGI Ventures, LLC v. Turner Sports Interactive, Inc. , No. 1:16-CV-3412-MHC, 2017 WL 3469528, at *3 (N.D. Ga. Feb. 17, 2017) (quoting Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ).
"Dismissal of a complaint, pursuant to Rule 12(b)(6), is appropriate when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Automated Tracking Sols., LLC v. Coca-Cola Co. , 223 F. Supp. 3d 1278, 1283 (N.D. Ga. 2016) (quoting Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist. , 992 F.2d 1171, 1174 (11th Cir. 1993) ), aff'd , 723 F. App'x 989 (Fed. Cir. 2018). "In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true and considers the allegations in the complaint in the light most favorable to the plaintiff." Id. (citing Hishon v. King & Spalding , 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) ).
In the context of 35 U.S.C. § 101, generally, "whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." Berkheimer v. HP Inc. , 881 F.3d 1360, 1368 (Fed. Cir. 2018). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." Id. "Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." Id.
*1230 However, Federal Circuit cases have demonstrated that "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." Id. Indeed, "[r]elying on the specification alone may be appropriate where ... the specification admits" the computer components are "well-understood, routine, and conventional" components. Aatrix Software, Inc. v. Green Shades Software, Inc. , 890 F.3d 1354, 1356 (Fed. Cir. 2018). "In a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute." Id.
III. DISCUSSION
In its Motion to Dismiss, SCH argues that Valentine's Second Amended Complaint should be dismissed because Valentine's patents fail to claim patentable subject matter under 35 U.S.C. § 101.
A. Whether the Claims Are Directed at an Abstract Idea ( Alice Step I)
The Court must first address whether the patents are directed towards an abstract idea. As this Court has described it, "[t]he trick is to try and detect the beating heart of the patent, its animating function." Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc. , 173 F. Supp. 3d 1324, 1330 (N.D. Ga. 2016) (citing Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.) , 687 F.3d 1266, 1279 (Fed. Cir. 2012) ), aff'd , 708 F. App'x 684 (Fed. Cir. 2018). In Alice , for instance, the Supreme Court rejected an effort to patent a computer-implemented system of intermediated settlement, concluding that the "concept" of intermediated settlement was reducible to a "fundamental economic practice" and was therefore an "abstract idea" within the meaning of § 101. The Federal Circuit elaborated on this test in Enfish, LLC v. Microsoft Corp. , 822 F.3d 1327 (Fed. Cir. 2016), holding that where computer-implemented method claims are at issue, the question under Alice step one is whether the claims implement an "improvement in computer capabilities" or instead "a process that qualifies as an abstract idea for which computers are invoked merely as a tool." Id. at 1335-36.
In its Motion to Dismiss, SCH maintains that the processes described in the '672 and '785 Patents do nothing more than restate the well-known and longstanding economic and business practice of presenting discounts or offers for goods and services based on certain criteria, such as a user's location. [Doc 26-2 at 1]. Reduced to its conceptual essence, SCH argues that Claim 18 of the '672 Patent comprises a hard drive with instructions executed by a processor to (i) receive a user's location; (ii) receive buying criteria from a user, including the quantity of a product or service and the date range of delivery; (iii) receive discount information from a seller, including selling criteria; (iv) match the buyer's and seller's criteria; (v) access past transactional and stored payment information; and (vi) provide a time-sensitive discount for those products or services. [Doc 26-2 at 11].
SCH also argues that the Asserted Claim of the '785 Patent is a mobile device that comprises computer storage that (i) prompts a user to accept terms and conditions and generates purchase data; (ii) transmits information about a user's purchases, location, and delivery time criteria; and (iii) receives an offer for products or services in response. [Doc 26-2 at 6-10]. In view of these claims, SCH argues, both of Valentine's patents are directed to the abstract idea of offering goods and services based on buying and selling criteria, including a customer's actual or desired location.
*1231 On the other hand, relying on the Federal Circuit's holdings from Enfish and its progeny, Valentine argues that the Asserted Claims cover patent eligible subject matter because they "are rooted in computer technology and improvements to a technological process." [Doc 29 at 11].
The Court disagrees with Valentine's characterization of the claims as "rooted" in computer technology. The Asserted Claims of the '672 and '785 Patents are directed to the economic and business practice of presenting discounts or offers for goods and services based on certain criteria, such as a user's location. In its briefing, Valentine characterized its patents as disclosing "a method of providing a discount to a user associated with a user device that utilizes consumer location information" ( '672 Patent) and a "method for transacting business electronically" ( '785 Patent). [Doc 29 at 2]. When asked to describe the '672 and '785 Patents at oral argument, Valentine also described each in economic terms: as either a "virtual deal room" or a way to match buying and selling criteria to provide aggregate offers of goods and services to customers.
Moreover, the Asserted Claims do not "overcome[ ] a problem specifically arising in the realm of computer networks," as Valentine contends. [Doc 29 at 2]. The purpose of the Asserted Claims is not to provide a technical solution to a technical problem; rather, it is to address economic issues using what both patents describe as "standard programming and/or engineering techniques." '672 Patent at 6:66-67; '785 Patent at 20:30-31. Neither the patents, nor Valentine in its briefs or at oral argument, actually identify a technical problem that the Asserted Claims attempted to solve. Likewise, while Valentine claims its invention improves an existing technological process, neither Valentine nor its patents identify what that process is or how it was improved.
To the contrary, the Asserted Claims show the claimed components provide a forum in which to practice the abstract idea of buying and selling based on certain criteria. Valentine characterizes its patents as providing an economic solution when it states the patents are "directed to an improvement in the art whereby users of the inventions are given the opportunity to choose among buying and selling criteria." [Doc 29 at 15]. The Asserted Claims are consistent with that economic description. Claim 18 of the '672 Patent, for example, covers "instructions" that are run on a standard computer processor, where each "instruction" is just the receiving, processing, or presenting of information. Those steps collectively implement the abstract economic idea of offering a good or service to a customer. See '627 Patent at 1:21-25. They are not directed to an improved technical process, such as a better way to receive, process, or present information.
The other Asserted Claim, Claim 1 of the '785 Patent, covers conventional technology that Valentine does not claim to have invented: (i) a "non-transitory computer readable storage medium" (e.g., a hard drive); (ii) a "processor"; (iii) a "location-based service module" (e.g., GPS); and (iv) a "wireless transmitter" (e.g., a cell phone antenna). '785 Patent at 22:44-23:8. These components are not being improved by the Asserted Claim; instead, they are acting as a tool to execute the economic practice of offering goods or services to customers.
Thus, both of the Asserted Claims are abstract because they use standard computing equipment to conduct economic practices rather than improve that computing equipment. See Mobile Telecomms. Techs. , 173 F. Supp. 3d at 1330-31. Since the Asserted Claims are directed towards *1232 an abstract idea, they therefore fail Alice 's first step.
B. Whether the Patents Contain an "Inventive Concept" (Alice Step II)
Because the Court has found that the patents concern an abstract idea, the Court turns to the second step of the Alice test. This step asks whether the patents disclose an "inventive concept"-i.e. , an element or combination of elements that is sufficient to ensure that although the patent claims an abstract idea the patent claim in practice "amounts to significantly more than a patent upon the ineligible concept itself." Alice , 573 U.S. at 218, 134 S.Ct. 2347 (quotations and alternations omitted). "Simply reciting 'the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet' or a computer is insufficient to transform an abstract idea into an inventive concept." TAGI Ventures, LLC v. Turner Sports Interactive, Inc. , No. 1:16-CV-3412-MHC, 2017 WL 3469528, at *7 (N.D. Ga. Feb. 17, 2017) (quoting DDR Holdings, LLC v. Hotels.com, LP , 773 F.3d 1245, 1257 (Fed. Cir. 2014) ).
Valentine itself characterizes the Asserted Claims as " 'receiving,' 'matching,' 'assessing,' 'presenting,' 'prompting,' 'generating,' 'transmitting,' and 'receiving' information," which is basic computer functionality that contains no inventive concept. [Doc 29 at 10]. Those conventional activities are not enough to transform an abstract idea into something that is patentable. See Elec. Power Grp. LLC v. Alstom S.A. , 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("[T]he claims' invocation of computers, networks, and displays does not transform the claimed subject matter into patent-eligible applications.").
Moreover, the Court finds that the patent specifications contain the factual narrative showing that the components in the claims are well-known, generic, conventional hardware and software components. For example, the '672 Patent acknowledges that "any programming methodology and/or computer architecture suitable for carrying out the present invention may be employed...." '672 Patent at 25:28-31. The '672 Patent also states that "the present invention may be implemented as a method, apparatus, or article of manufacture using standard programming and/or engineering techniques to produce software, firmware, hardware, or any combination thereof." '672 Patent at 6:65-7:1 (emphasis added). Likewise, the '785 Patent specification states that "all or portions of the subject innovation may be implemented as a method, apparatus or article of manufacture using standard programming and/or engineering techniques to produce software, firmware, hardware, or any combination thereof to control a computer to implement the disclosed innovation." '785 Patent at 20:28-33 (emphasis added). The '785 patent also states the "Internet has been a delivery tool to provide these solutions." '785 Patent at 5:39-43. In other words, both patent specifications admit that the computer components used to carry out the claimed invention are well-known, conventional, and routine components. See Berkheimer v. HP Inc. , 881 F.3d 1360, 1368 (Fed. Cir. 2018).
In response, Valentine has cited no portion of either specification to show that any of the components used were non-conventional, or used in non-conventional ways. Nor does Valentine argue that its claims cover an ordered combination of elements that render them to be patent *1233 eligible.[1]
As the Federal Circuit has acknowledged, the specification's recitation of these facts forecloses any legitimate factual dispute. Aatrix Software, Inc. v. Green Shades Software, Inc. , 890 F.3d 1354, 1356 (Fed. Cir. 2018).
C. Whether Claim Construction is Required
Valentine also argues that "Claim construction would assist the court in determining the meaning of Claim 18 of the '672 Patent, as well as Claim 1 of the '785 Patent." [Doc 29 at 6]. However, while Valentine identifies several terms that it asserts should be construed, Valentine fails to (i) provide a construction for those terms; (ii) explain why (or how) the identified terms are ambiguous; or (iii) explain how claim construction might affect the Court's analysis. TAGI Ventures , 2017 WL 3469528, at *10 ("However, while [Plaintiff] identifies several terms that it asserts would be necessary to construe, it fails to explain why (or how) the identified terms are ambiguous, or how claim construction might affect the Court's analysis."). "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101." Content Extraction & Transmission LLC v. Wells Fargo Bank. Nat. Ass'n , 776 F.3d 1343, 1349 (Fed. Cir. 2014).
The Court concludes that, even when construed in the manner most favorable to Valentine,[2] there is "no reasonable construction of the claims that would bring them within patentable subject matter." Ultramercial, Inc. v. Hulu, LLC , 772 F.3d 709, 719 (Fed. Cir. 2014) (internal quotation marks omitted). Therefore, no claim construction is necessary.
IV. CONCLUSION
For the foregoing reasons, it is hereby ORDERED that Defendant Six Continents Hotels, Inc.'s Motion to Dismiss for Failure to State a Claim [Doc 26] is GRANTED . The Court hereby directs the Clerk to close this case.
IT IS SO ORDERED this 9th day of January, 2019.

Valentine argues that the claims do not preempt and, therefore, the patent is valid. But that is not the law. Ariosa Diagnostics, Inc. v. Sequenom, Inc. , 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility."). Nevertheless, a review of the specification shows that the claims are meant to cover a wide variety of industries, and preemption is therefore a concern. For example, the '672 Patent specification states "the present invention has wide applicability to the purchasing and/or selling of a variety of different products and/or services," and then proceeds with industry examples. '627 Patent at 15:51-16:11.

The Court notes that SCH asserts that Valentine's claim construction positions can be gleaned from Valentine's infringement contentions attached to the Motion to Dismiss [Doc 26-4]. The Court need not and did not consider anything from Valentine's infringement contentions concerning these constructions because Valentine does not propose, and the Court cannot envision, any reasonable construction of those claim terms that would bring them within patentable subject matter as envisioned by 35 U.S.C. § 101 under any standard applied.